GERTRUDE JOHNSON, as Sole Administratrix, etc., of EDWARD. LEON JOHNSON, Deceased, Respondent, *v*. STATE OF NEW YORK, Appellant.

Third Department, January 8, 1919.

State — negligence — State highways — death of automobilist by reason of failure to guard sharp curve in highway — evidence justifying recovery.

Where an improved State highway, placed under the patrol system, contained a sharp curve to the left while the direct line of the roadway leading to the curve continued over a smooth level space of fifty-seven feet in front of a blacksmith shop, at the end of which space was a retaining wall, and an automobilist driving at night in a dense fog which obscured the roadway continued on the straight line of the road over the open space and was killed when his machine went over the retaining wall, the Court of Claims was justified in finding that the conditions were unusual and tended to mislead persons traveling in that direction and that the State was liable for its negligence in leaving the open space unguarded.

The question of the decedent's contributory negligence was also for the court and its determination should be affirmed.

H. T. KELLOGG, J., dissented.

APPEAL by the defendant, the State of New York, from an order and determination of the Court of Claims, entered in the office of the clerk of said court on the 17th day of September, 1918.

*Merton E. Lewis, Attorney-General [Alexander Otis, Deputy Attorney-General, of counsel], for the appellant.*

*James O. Sebring,* for the respondent.

LYON, J.:

The main question involved upon this appeal is whether the State is liable for its failure to maintain a barrier at the place of the accident.

Edward L. Johnson was killed in an automobile accident just off the State highway leading from the city of Elmira into the State of Pennsylvania. The highway was improved about 1900, and was placed under the patrol system in June, 1909. Johnson and his companion, one Osborne, left Mansfield during the late afternoon of August 3, 1916, reaching Elmira in the early evening, and returning left Elmira about one o'clock in the morning, Johnson driving the car. It was a very dark, foggy night. When they reached Pine City, a hamlet about seven miles from Elmira, the fog had become so heavy that with their headlights burning they could see about ten feet ahead of the car. A short distance from Pine City there was a sharp curve in the highway to the left. A blacksmith shop stood on the right-hand side of the highway. The space in front of the shop had been filled in and beaten down to approximately the level of the highway. It was in the direct line of the roadway, and presented the appearance in the night time of being the continuation of it. At the end of the open space, and fifty-seven feet from the highway, was a retaining wall from four to seven feet high, and beyond that a field. The open space was unguarded, although years ago there had been a log across it. After having cautioned Johnson to drive carefully and to look out for the place in the road where the man was killed, Osborne closed his eyes and went to sleep. The car traveling at the rate of probably ten or fifteen miles an hour ran across this fifty-seven-foot space and over the wall, killing Johnson. There was no eye witness of the accident. For the death of Johnson this action was brought, the plaintiff claiming that the State failed to maintain the road in a reasonably safe condition for public travel. A verdict for $8,390 and interest has been rendered against the State by the Court of Claims.

The statute provides (Highway Law, § 176)*: " The State shall not be liable for damages suffered by any person from defects in State and county highways, except such highways as are maintained by the State by the patrol system * * *." As originally enacted the section did not contain the exception, and it was held that under it no liability existed as against the town. This defect was supplied by chapter 570 of the Laws of 1910, which apparently imposes a liability on the State as to such highways. (*Ferguson* v. *Town of Lewisboro,* 213 N. Y. 141.) The liability of the town was the liability of the superintendent of highways of the town. In the case at bar the liability is that of the State. It is not dependent upon the liability of the Commissioner of Highways, and furthermore there is no proof in the case that the State did not have the necessary funds to erect a barrier.

Prior to the amendment of 1910, in an action against a town, it was held that the question of liability for not maintaining a barrier was for the jury. (*Ivory* v. *Town of Deerpark,* 116 N. Y. 476.) In that case plaintiff was traveling in a wagon in the night time along a road in the town which for years had been used as a public highway. At a point where the beaten track curved, the plaintiff's horses instead of following the curve continued straight on and fell into a cut made by a railroad company about eleven years before, and plaintiff was injured. The edge of the cutting was about eleven feet from the beaten track. There was no ditch or barrier between. The surface was substantially smooth and unbroken, and had remained so since the time the excavation was made. To the same effect are *Jewhurst* v. *City of Syracuse* (108 N. Y. 303) and *Hayden* v. *Attleborough* (7 Gray, 338). It is well settled that it is the duty of a municipal corporation to erect railings or barriers along the highway at places where they are necessary to make the highway safe and convenient for travelers in the use of ordinary care, and that it is liable for injuries to travelers resulting from a breach of its duty in this regard. (13 Ruling Case Law, p. 421, § 346.) It must be deemed settled

* See Consol. Laws, chap. 25 (Laws of 1909, chap. 30), § 176, as amd. by Laws of 1910, chap. 570; Laws of 1912, chap. 83, and Laws of 1916, chap. 578.— [REP.

that as a general rule the necessity for barriers, including the question whether commissioners or superintendents were negligent in omitting to supply them and keep them in repair, is a question of fact for a jury. (*Wood* v. *Town of Gilboa*, 76 Hun, 175; affd., 146 N. Y. 383.) In *Nicholson* v. *Town of Stillwater* (208 N. Y. 203) the plaintiff's intestate was driving an automobile after dark along a much-traveled highway. At a point where the accident occurred the road rapidly narrowed and the adjacent land from being level with the roadway turned into a sharp descending slope of several feet from the edge of the highway. There was no barrier or guard of any kind to mark the edge of the highway, but instead thereof weeds had been allowed to grow up which obscured and concealed such edge. The free space left for the passage of an automobile and a vehicle was very small. Intestate applied the brakes of his car and clearing a tree which stood close to the roadway pulled to the side of the road so as to allow a horse and wagon to pass him and brought his car to a stop. He was so near the edge of the bank that, as he stopped, the car slipped down and over the bank, overturning and killing him. Plaintiff gave evidence for the purpose of showing that other accidents had happened at this place. It was held that the issue of defendant's freedom from negligence should be submitted to a jury.

But highway authorities are under no duty to maintain guards to prevent persons from straying on the portion of the highway not used for travel, except as against dangers in such close proximity thereto as to make traveling on it perilous, or where there are unusual or exceptional conditions. (*Flansburg* v. *Town of Elbridge*, 205 N. Y. 423.) I think the conditions here must be held to have been unusual and exceptional. The Court of Claims has so found. They have found that the conditions tended to mislead and deceive persons traveling southerly into the mistaken belief that instead of said highway curving or bending at a sharp angle to the left, it continued directly ahead over the said space and embankment.

We think the question of contributory negligence was also for the judge. Osborne testified that they had two or three small glasses of beer while at Elmira, but that they were not at all intoxicated. There was also some testimony as to he emergency brake being out of order, a screw was loose and

rattled. Johnson had but fifty-seven feet to go before his machine was over the bank. The witnesses agree that the night was so dark that a person could see but a few feet without a light. He may have supposed he was at some other point in the road. He could not have known that he was at this point of danger.

As to the inspection of the place of accident by the judge who tried the case. There was evidently one inspection and that by the consent of the attorneys who accompanied the judge. There is no claim of any misconduct on his part. By stipulation the case was later submitted for decision to two other judges of the Court of Claims. His opinion, which had not been handed down, was adopted by the court.

The determination should be affirmed.

All concurred, except H. T. KELLOGG, J., dissenting.

Judgment affirmed, with costs.