ANNA A. DONNELLY, as Administratrix, etc., of EDWARD J. DONNELLY, JR., Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 18498.)

Court of Claims, April 26, 1928.

State — claims against — claimant's intestate was killed in automobile accident at curve on State highway — claim is made that State was negligent by reason of its failure to erect and maintain guard rails at curve — proof does not establish that death was caused by negligence of State in construction and maintenance of highway — claim dismissed.

This claim against the State, predicated upon the death of plaintiff's intestate, as a result of the negligence of the State by reason of its failure to erect and maintain guard rails at a curve on a State highway, must be dismissed.

The fact that, at the beginning of the curve where the accident happened, the course of an old road ran straight ahead for some distance, upon which no

barriers were erected, does not warrant a finding that decedent was deceived as to the course of the highway, where it appears that the roadbed of the old road, during the eleven years that it had been in disuse, had returned to its natural state and was covered with a growth of sod and grass which, when this accident happened, should have been luxuriant, and a hedge continued around part of the curve so that it overlapped the north line of the new highway prolonged westerly a foot or two, so that one watching the road could not have been misled because of the great variance in the color of the roadway, which was very light, and of the shoulder, which was dark.

CLAIM against State pursuant to Laws of 1927, chapter 713, for negligence in failing to erect and maintain guard rails on State highway.

*Carter & Conboy*, for the claimant.

*Albert Ottinger, Attorney-General* [*John L. Campbell, Deputy Assistant Attorney-General*, of counsel], for the defendant.

POTTER, J. This claim is prosecuted pursuant to the consent given by the Legislature that the State be sued under chapter 713 of the Laws of 1927, which confers jurisdiction upon the Court of Claims to hear, audit and determine the claimant's claim and if the said court find that the death of Edward J. Donnelly, Jr., was caused by any negligence of the State of New York, its officers, agents or employees in the " construction and maintenance of said highway and the approaches thereto, and the location and route thereof," the court may make an award herein.

It is claimed that claimant's intestate came to his death as the result of the negligence of the defendant due to its failure to erect and maintain barriers or guard rails at a curve on State Highway No. 5533 in the town of East Greenbush, Rensselaer county, about one and two-tenths miles east of the city of Rensselaer.

At about eight o'clock in the evening of July 12, 1925, the decedent with Sarah C. Dunphy, Daniel Redmond and Marie Hogan started out in the decedent's automobile for a ride to Algonquin Beach. The car was a Cunningham roadster. Miss Dunphy sat in the front seat with the decedent who was driving and the others sat in the rumble seat in the rear. They drove around until about eleven o'clock when they started for home. The night was dark but the road was dry and when the car reached a point on said highway nearly opposite the residence of J. T. May, it left the road at a curve turned to the left, struck the edge of the concrete and tipped over. Edward J. Donnelly, Jr., was killed and the other passengers were more or less seriously injured.

The State in 1914 constructed Highway No. 5533 of concrete. The metal part of the road was 16 feet in width and 17 feet at the curve later described. At the place of the accident, the State

altered the course of the road so that the new concrete road curved away from the site of the old road, in a curve of about 35 to 40 degrees, which curve was 350 feet in length and visible in daylight at a distance of 700 or 800 feet and at night for over 200 feet. At about the beginning of this curve, traveling west, the course of the old road was straight ahead for some distance. After the new construction no barriers were erected and the trees and telephone poles along the line of the old road remained in the same position as they stood before the old road was abandoned, but the roadbed of the old road during the eleven years that had passed from 1914 to the time of the accident, July 12, 1925, had returned to its natural state and was covered with a growth of sod and grass which in July should have been luxuriant, and a hedge on the north side of the road continued around part of the curve so it overlapped the north line of the concrete road prolonged westerly a foot or two. That is to say, it extended over a part of the site of the old road.

The concrete surface of the road was very light in color and the vegetation growing over the site of the old road was dark. I can see how one watching the trees and the telephone poles might be deceived as to the course of the highway, but one watching the road could not have been misled because of the great variance in the color of the roadway and of the shoulder.

It is contended that this claim falls within the rule laid down in *Johnson* v. *State* (104 Misc. 395). I think not. In the *Johnson* case it appeared that " This triangular space in front of the black-smith shop, being continually driven upon and used by patrons of the blacksmith shop, had, in the night time, the same appearance as the road itself. It was, to all appearances, a part of the road;" and again " the dirt approach to the blacksmith shop, being of the same appearance as the road itself, naturally led a driver to believe that the road continued straight south past the front of the shop." (p. 398.) Judge LYON writing for the Appellate Division in *John-son* v. *State* (186 App. Div. 389), at page 392 says: " I think the conditions here must be held to have been unusual and exceptional." Quite the contrary in the instant case. There was nothing about the ground surface to mislead the claimant's intestate. It is common knowledge that automobile lights are focused to throw the rays of light upon the road and not up in the trees. There is nothing unusual, exceptional or inherently dangerous in a curve which is less than one-half of a right angle.

There is a sharp dispute as to the place where the accident occurred. The claimant contends that the automobile was driven straight ahead, left the road at the beginning of the curve and

turned over within twenty-five feet. I cannot accept this as a fact. The accident occurred about eleven-thirty P. M. The witness Austin, who runs a garage about a mile and one-half from the scene of the accident, testified that he was called about eleven-thirty and " we were only a very few minutes getting there." He went with his wrecking car and removed the wrecked car to his garage. He found the wrecked car about opposite the driveway leading to Mr. May's residence and on the opposite side of the road and all over the road there was broken glass. Mr. May corrobo·rates his statement as to the location of the broken glass. On Exhibit F the witness marked with a large cross the location of the broken glass and a small cross where the car stood when he arrived there. An examination of Exhibit A shows that a point opposite May's driveway was somewhat over 200 feet from the beginning of the curve and the location of the wrecked car is conclusive evidence that the car was that distance beyond the beginning of the curve when it tipped over.

It seems apparent from this testimony that if the car left the road at the beginning of the curve it was off the road for quite a time and on returning to the road at May's driveway it overturned leaving broken glass in the highway and slid over to the opposite side of the road.

There is no suggestion that the metal part of the highway and the shoulders were not in good condition. There can be no evidence as to what the driver of the car saw ahead of him, but the conclusion is inescapable that the car had rounded the turn and was on the straightaway when it overturned, and if it left the road at the curve, it traveled over 200 feet on the shoulder before overturning. I am of the opinion the claimant has not established that the death of her intestate was caused by the negligence of the State in the construction and maintenance of said highway and the claim should, therefore, be dismissed.